```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|   |   |
|---|---|
| JUDITH A. TIDWELL-TAYLOR, : | HONORABLE JOSEPH E. IRENAS |
| Plaintiff, : | Civil Action No. 06-1836 (JEI) |
| v. : |  |
|  : | **OPINION** |
| JO ANNE B. BARNHART, : |  |
| Commissioner of Social : |  |
| Security, : |  |
| Defendant. : |  |

**APPEARANCES:**

ADRIENNE F. JARVIS, ESQUIRE
By: Adrienne F. Jarvis, Esq.
800 Kings Highway North, Suite 304
Cherry Hill, NJ 08034
    Counsel for Plaintiff.

CHRISTOPHER CHRISTIE, UNITED STATES ATTORNEY
By: Kristina Cohn, Esq.
Special Assistant U.S. Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278-0004
    Counsel for Defendant.

**Irenas**, Senior District Judge:

Judith Tidwell-Taylor ("Taylor") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), and Section 1634(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), for review of the final determination of the Commissioner of Social Security (the "Commissioner"), denying Taylor's application for Social Security Disability Insurance

Benefits for a disability alleged to have commenced on September 27, 1996.[1]  For the following reasons, this Court affirms the Commissioner's decision.

## I.

On May 13, 1994, Taylor filed an application with the Social Security Administration (the "SSA") for a period of disability and disability insurance benefits. (R. at 60.)  She alleged an inability to work as of September 8, 1992. (*Id.*)  The SSA denied Taylor's claim and, subsequently, denied her request for reconsideration. (*Id.*)

Taylor appealed the denial of her claim and timely requested a hearing on March 15, 1995. (R. at 60.)  The hearing was held before an Administrative Law Judge ("ALJ") on April 3, 1996, in Philadelphia, Pennsylvania, and continued on May 7, 1996. (*Id.*)  ALJ Earl E. Shamwell issued a decision dated September 26, 1996, holding that Taylor "was not under a 'disability' as defined in the Social Security Act, at any time through the date of this decision" and "not entitled to a period of disability or disability insurance benefits."  (R. at 60-75.)

Taylor requested review of the ALJ's decision by the Appeals Council of the SSA, which denied her request for review on May 8,

---

[1] Because Taylor was a "fully insured individual" only through December 31, 1996, to obtain benefits her disability must have began before that date. 42 U.S.C. § 416(i)(2)(C); 416(i)(3); 414(a).

1997. (R. at 54-55.)  After obtaining counsel, Taylor filed additional requests for review of the ALJ's decision from the Appeals Council.  (R. at 38-53.)  On July 2, 2001, the Appeals Council again denied Taylor's request for review and reopening. (R. at 36-37.)  The denial of the May 13, 1994 application was never appealed to the District Court.[2]

Subsequently, on September 27, 2001, Taylor submitted a second application with the SSA for a period of disability and disability insurance benefits.  (R. at 29.)  Taylor alleged an onset date of September 27, 1996, the day after ALJ Shamwell's decision.  (R. at 30.)  The SSA denied Taylor's application and, subsequently, her request for reconsideration.  (R. at 29, 334.)

Again, Taylor appealed the denial of her claim and timely requested a hearing on September 16, 2002.  (R. at 339.)  The hearing was held before ALJ James J. D'Alessandro on March 24, 2004, in Voorhees, New Jersey.  (R. at 29.)  ALJ D'Alessandro issued a decision dated May 27, 2004, holding that Taylor "was not under a 'disability' as defined in the Social Security Act during the period from September 27, 1996 through December 31, 1996" and "not entitled to a period of disability or Disability Insurance Benefits."  (R. at 34-35.)

Taylor again requested review of the ALJ's decision by the

---

[2] This course of action was suggested by the Appeals Council in its denial of July 2, 2001.  (R. at 36-37.)

Appeals Council of SSA on June 14, 2004. (R. at 23.) In accordance with this request, Taylor's counsel submitted a brief and additional evidence by letter dated December 27, 2004. (R. at 613-26.) On November 4, 2005, the Appeals Council denied the request for review. (R. at 16-19.) In the denial, the Appeals Council ordered that the additional evidence presented by Taylor be made part of the administrative record. (R. at 20.) ALJ D'Alessandro's decision thus stands as the final decision of the Commissioner. (R. at 16.)

By way of correspondence dated December 15, 2005, Taylor advised the Appeals Council that she was no longer represented by counsel and requested an extension of time to file a civil action. (R. at 15.) On December 22, 2005, the Appeals Council granted Taylor's request, allowing a thirty day extension. (R. at 14.) Thereafter, on January 12, 2006 Taylor requested a second extension of time which was granted by the Appeals Council on March 6, 2006. (R. at 11-13.) Ultimately, Taylor timely filed her appeal with this Court on April 20, 2006.

## II.

Taylor is a fifty-four year old female and has a high school education. (R. at 30, 369.) Her past relevant work experience includes employment as a psychiatric counselor, admissions director for a nursing home, and a secretary. (R. at 30, 379-

4

81.)  As a secretary, Taylor received and routed all incoming calls and maintained various sales files.  (R. at 379-81.)  Additionally, she typed and operated a fifty-two line telephone switchboard.  (R. at 100.)  In the performance of this job, Taylor indicated that she walked one hour a day, stood one hour a day, and was seated for eight hours a day.  (*Id*.)  The heaviest weight that she was required to lift was ten pounds.  (*Id*.)  In connection with Taylor's September 26, 1996, hearing decision, a vocational expert testified to Taylor's past work as that of sales secretary, receptionist, and executive secretary.  (R. at 72.)

   Taylor alleged that she was unable to work beginning September 27, 1996. (R. at 30.)  Taylor contends that she was unable to work because she suffered from back pain, leg pain, headaches, high blood pressure, and depression.  (R. at 30, 362.)  The record showed that Taylor originally sustained injuries to her lower back, neck, and shoulders after being in a car accident on September 8, 1992.  (R. at 135, 176.)  As a result of the accident, Taylor sought medical treatment at North Philadelphia Health System and with Dr. Donald Parks.  (R. at 170-79, 236-53, 592-605.)

   The record presented medical evidence regarding Taylor's medical history during the alleged closed period of disability.  On August 13, 1996, Taylor had a magnetic resonance image ("MRI")

of her lumbar spine which revealed a minimal disc herniation at L3/4 disc level and a minimal disc bulge at the L5/S1 level. (R. at 598-99.) Additionally, on or around August 21, 1996, Dr. Parks noted that Taylor complained of migraine headaches. (R. at 626.)

On September 23, 1996, Taylor underwent an examination with Dr. Parks. (R. at 596.) In his report, Dr. Parks noted that Taylor had complaints of vomiting, dizziness, frequent urination, and headaches. (*Id.*) After conducting a physical examination, Dr. Parks indicated that Taylor's chest and heart exams were normal and she was within normal neurological limits. (*Id.*) Thereafter, Dr. Parks diagnosed Taylor with disc herniation and a urinary tract infection. (*Id.*)

On April 1, 1997, Taylor was again evaluated by Dr. Parks after complaints of severe lower back pain and upper back pain. (R. at 594.) Taylor indicated that the upper back pain had begun the previous day. (*Id.*) Dr. Parks diagnosed Taylor with disc herniation, urinary tract infection, and low back pain. (*Id.*)

Dr. Claudia Petruncio examined Taylor regarding complaints of lower back and right leg pain on July 2, 1997. (R. at 442.) Taylor reported that she could not walk one block or even go up and down steps without discomfort. (*Id.*) Upon examination, Dr. Petruncio noted that Taylor had diffuse lower back pain and muscle spasms. (R. at 441.) As such, Dr. Petruncio's impression

was disc herniation and lower back pain.  (*Id.*)

Dr. Petruncio again saw Taylor on September 25, 1997, when she diagnosed Taylor with diffuse back spasms.  (R. at 439.)  On March 19, 1998, Taylor told Dr. Petruncio that her back pain loosened up somewhat one or two hours after she wakes up.  (R. at 437.)  Moreover, in April 1998, Taylor mentioned to Dr. Petruncio that her pain medication helped, but would wear off after four to five hours.  (R. at 436.)

In January 1999, Dr. Petruncio noted that Taylor complained of sinus pressure and constant headaches.  (R. at 431.)  At this time, Taylor was taking her blood pressure medication as needed.  (*Id.*)  In July 2000, Dr. Petruncio noted that Taylor's back and leg pain began in 1992 and that Taylor had been disabled since that time.  (R. at 396-98.)  However, she also noted that Taylor's pain was controlled by medication.  (R. at 398.)  By way of summation, the treatment notes from January 1999 through October 2001 indicate that Taylor was treated for back pain, depression, leg pain, sinus headaches, and hypertension.  (R. at 406-30.)

From October 2001 through September 2002, Taylor also sought treatment with Dr. Marvin Wallach.  The records indicate that Taylor complained of sore joints, lower back pain, and sinus pressure.  (R. at 568-85.)  Dr. Wallach reported that Taylor was neurologically intact.  (*Id.*)  Additionally, on January 21, 2002,

7

Taylor was examined by Peter Jaffe, D.O., wherein Dr. Jaffe diagnosed Taylor with lumbosacral sprain and strain, and chronic pain syndrome. (R. at 486.) Dr. Jaffe noted that Taylor had epidural injections which have helped her somewhat. (R. at 485.)

The record also contained a general medical report authored by Dr. Petruncio on January 7, 2002. Dr. Petruncio noted that Taylor suffered from degenerative joint disease at the L4-5 and L5-S1 disc levels with small disc herniation, hypertension, and chronic pain. (R. at 394.) Dr. Petruncio examined Taylor again in November 2003, when Taylor complained of lower back pain after she fell in a supermarket in October 2003. (R. at 545.) Dr. Petruncio referred Taylor to Dr. Murray Klein, who noted Taylor's history of disc herniation and hypertension. (*Id.*) Finally, in March 2004, Taylor was once again examined by Dr. Klein, wherein Dr. Klein diagnosed her with multilevel lumbar radiculopathy most likely involving the L5 and S1 nerve root areas. (R. at 480.)

### III.

This Court reviews the decision of the ALJ to determine whether substantial evidence on the record supports the ALJ's decision. *See* 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)). Any finding of fact made by the ALJ shall be conclusive if it is supported by substantial evidence. 42 U.S.C.

§ 405(g). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate." *Plummer*, 186 F.3d at 427.

**IV.**

**A.**

The SSA uses a five-step sequential evaluation process to determine whether an individual is disabled. 20 C.F.R. § 404.1520. In *Plummer v. Apfel*, the Third Circuit described the five-step evaluation:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 2290-91, 96 L.Ed.2d 119 (1987). In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume her former occupation, the evaluation moves to the final step.
>
> At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable

>  of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. *See* § 404.1523.

*Plummer*, 186 F.3d at 428. If a determination about a claimant's disability can be made at any step in the sequential evaluation, the analysis is concluded without continuing on to any remaining steps. 20 C.F.R. § 404.1520(a)(4).

**B.**

ALJ D'Alessandro held that Taylor was "not under a disability, as defined by the Social Security Act during the period from September 27, 1996, through December 31, 1996." (R. at 34.) The ALJ also concluded that Taylor was not entitled to a period of disability and disability insurance benefits under Sections 216(I) and 223 of the Act. (R. at 35.) This determination was reached after proceeding through the first four steps of the sequential evaluation. Upon review of the record, this Court concludes that the ALJ's findings are supported by substantial evidence as required by Section 405(g) and *Plummer*.

In the first step, the ALJ found that Taylor had not engaged in substantial gainful activity between September 27, 1996, and December 31, 1996, the alleged closing period of disability. (R.

10

at 30.)  ALJ D'Alessandro determined in the second step that Taylor was severely impaired as a result of the following medical conditions: back, leg, and arm pain, headaches, high blood pressure and depression. (R. at 31.)  To obtain a designation of severe impairment, Taylor must be significantly limited either physically or mentally in her ability to do basic work activities.  20 C.F.R. § 404.1520(c).

The ALJ's analysis of the evidence at each of the first two steps was brief.  However, it is clear from reviewing the record that these findings are supported by substantial evidence.  The ALJ's decision, his findings, and the available earnings records indicate that Taylor has not engaged in substantial gainful activity during the alleged closed period of disability.  (R. at 356-60.)  The medical reports contained within the record verify that Taylor's physical and mental status is consistent with the findings made in step two.

In the third step, the ALJ found that Taylor's impairments were "not 'severe' enough to meet or medically equal, either singly or in combination to any one of the impairments" as set forth in 20 C.F.R. § 404, Subpt. P, App. 1. (R. at 31, 34.)  In his opinion, ALJ D'Alessandro held that Taylor's impairments do not meet or equal a Listing because the medical evidence in the record did not evidence the same.[3]  (R. at 31.)

---

[3] Neither of the parties dispute that Taylor's impairments did not meet or equal any criteria for a listed impairment.

11

Next, the ALJ performed an extensive analysis of the medical reports and other relevant documentation contained within the record to determine Taylor's residual functional capacity.[4] Specifically, the ALJ reviewed the medical evaluations generated by Dr. Parks and Dr. Petruncio, the 1996 MRI, and Taylor's subjective allegations.  (R. at 31-35.)  The reports of these physicians and the diagnostic test addressed Taylor's back pain, headaches, and high blood pressure. (*Id*.)  Based on his analysis of this evidence, the ALJ found that Taylor retained the residual functional capacity to perform light and/or sedentary work[5] during the alleged closed period of disability.  (R. at 34.) Although the ALJ noted that Taylor could perform sedentary work, he cited the following limitations:  no repetitive bending, twisting, crawling or kneeling.  (R. at 33.)

Taylor argues that the ALJ failed to properly determine her residual functional capacity during the alleged closed period of disability.  Specifically, she contends that the ALJ improperly found that her past relevant work included employment as a receptionist.  Taylor also argues that the ALJ improperly

---

[4] "Residual functional capacity" is defined as the most that an individual can still do in a work setting despite any physical or mental limitations. 20 C.F.R. § 404.1545(a).

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

rejected the medical opinion of Taylor's treating physician, Dr. Petruncio, who opined that Taylor had been disabled since 1992. Finally, Taylor argues that the ALJ did not adequately consider Taylor's mental impairment, namely depression, in evaluating her residual functional capcity.

In determining Taylor's residual functional capacity, the ALJ relied on the medical evidence in the administrative record during the relevant period. The MRI of Taylor's lumbar spine, taken in August 1996, directly before the alleged period of disability, indicated that Taylor suffered from a minimal disc herniation and minimal disc bulge. (R. at 599.) Additionally, upon being examined by Dr. Parks in September 1996, Taylor was diagnosed with disc herniation and a urinary tract infection. (R. at 596.) Furthermore, the ALJ noted that it was not until April 1997 that Taylor reported pain to Dr. Parks and Taylor specifically indicted that the pain had not started until the day before her visit. (R. at 33.)

Moreover, the ALJ examined the medical opinions rendered by Dr. Petruncio. The ALJ noted that Dr. Petruncio began treating Taylor in 1997 and thereafter evaluated Dr. Petruncio's records regarding Taylor until 2000. (R. at 32-33.) The ALJ even recounted that in July 2000, Dr. Petruncio opined that Taylor had been disabled since 1992 due to back and leg pain. (R. at 32.)

However, the ALJ noted that there was "little evidence to

13

support that [Taylor's] conditions were debilitating during the period from September 27, 1996 through December 31, 1996." (R. at 33.)  The ALJ arrived at this conclusion not only by relying upon the medical evidence during the relevant period of disability, but also considered the entire record.  (*Id.*)  In recounting the 1996 MRI findings and the diagnoses of Dr. Parks, which were the closest in proximity to alleged period of disability, the ALJ noted that these findings gave little support to Dr. Petruncio's conclusion that Taylor had been disabled since 1992.  (*Id.*)  In fact, there were no records that indicated Taylor complained of back and/or leg pain or that said pain rendered her unable to work during the period at issue. Therefore, in evaluating all of the available medical evidence and specifically relying upon the medical evidence near the time of alleged disability, the ALJ adequately considered all of the available medical opinions in rendering his decision that Taylor was not disabled during the alleged closed period of disability.

Taylor's argument that the ALJ erred in failing to address her depression in determining her residual functional capacity is also flawed.  In the record, there are no treatment notes indicating that Taylor had received any treatment or hospitalization for her depression during the relevant period at issue.  The ALJ specifically noted that it was not until September 1999, well after the alleged period of disability, that

14

Taylor reported symptoms of depression to Dr. Petruncio. (R. at 33.) Furthermore, no physician opined that Taylor had any functional restrictions or limitations as a result of her depression. Therefore, the record demonstrated that Taylor was not precluded from performing sedentary work with the cited limitations from September 27, 1996, through December 31, 1996, as a result of her depression.

In step four, the ALJ found that Taylor could return to her past relevant work as a receptionist. (R. at 33.) The ALJ's decision that Taylor's past relevant work included work as a receptionist is supported by substantial evidence. As described above, the medical evidence of record demonstrated that Taylor retained the residual functional capacity to perform sedentary work subject to certain limitations. Taylor's past work as a receptionist is classified as sedentary by the Dictionary of Occupational Titles ("DOT"). DOT Code 237.367.038.

Taylor argues that Taylor's past position as a receptionist does not satisfy the requirements of 20 C.F.R. § 404.1565(a)[6], which is necessary for work to be considered past relevant work. The ALJ's determination that Taylor's past relevant work included work as a receptionist meets the requirements of 20 C.F.R.

---

[6] 20 C.F.R. § 404.1565(a) states in pertinent part: Work experience means skills and abilities you have acquired through work you have done which show the type of work you may be expected to do. Work you have already been able to do shows the kind of work that you may be expected to do. We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity...

§ 404.1565(a).  In this case, the 15 year requirement ran up to December 31, 1996, the date Taylor was last insured for disability benefits.  As such, the ALJ properly considered Taylor's past work as a receptionist relevant since Taylor last performed the job in 1988, only 8 years prior to her date last insured.  Furthermore, Taylor's work may be considered substantial because her gross monthly earnings averaged around $916.00 per month, thus exceeding the $300.00 level for work to be considered substantial.

The ALJ's determination that Taylor did work as a receptionist is also supported by substantial evidence.  In the opinion, the ALJ referenced Exhibit 7 as authority for his receptionist finding.  (R. at 33.)  Exhibit 7 is the vocational report of Taylor.  (R. at 97-102.)  In the report, Taylor herself describes her job title as "Secretary 01 Marketing Manager & Sale Dept. & Recep."  (R. at 100.)  Additionally, she described her duties as:  handling a fifty-two line telephone switchboard, receiving and routing incoming calls, maintaining sales files, typing, and performing clerical duties.  (R. at 100, 379, 642.)

Additionally, at Taylor's September 26, 1996, administrative hearing on her earlier claim, a vocational expert described Taylor's past relevant work as that of a receptionist.  (R. at 72.)  Therefore, substantial evidence, including Taylor's description of her previous work, supports the conclusion that

Taylor worked as receptionist.  (R. at 100, 379.)

In assessing the credibility of Taylor and considering the medical evidence in the record, the ALJ determination of Taylor's residual functional capacity was supported by substantial evidence in the record.  Furthermore, "a claimant's subjective statements about pain or other symptoms, without more, cannot be the basis for a disability."  *Jaramillo v. Commissioner*, 130 F. App'x 557, 562 (3d Cir. 2005).  Moreover, Taylor has offered no other evidence and does not suggest that her combined impairments would be medically equivalent to a listed impairment.  *Ballardo v. Barnhart*, 68 F. App'x 337, 338 (3d Cir. 2003) ("However, a claimant bears the burden of producing evidence that her impairment is equivalent to a listed impairment, and equivalence to a listed impairment must be determined on the basis of medical findings 'supported by medically acceptable clinical and laboratory techniques.'")(citations omitted).

Since the ALJ's decision, finding that Taylor's impairments did not prevent her from doing her past relevant work, is supported by substantial evidence, the ALJ did not have to proceed to step five of the analysis.  Accordingly, this Court finds that the ALJ's decision was supported by substantial evidence.

**V.**

For the aforementioned reasons, the Court will affirm the final decision of the Commissioner denying Taylor's application for disability benefits.  The Court will issue an appropriate order.

Date: April 11, 2007

s/Joseph E. Irenas<br>JOSEPH E. IRENAS, S.U.S.D.J.